IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**WILLIAM Y. BUCHANAN**,

      Petitioner,

v.                                                                                  No. Civ. 03-1231 JP/RHS

**PATRICK SNEDEKER**, Warden, et al.,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDATIONS OF THE
UNITED STATES MAGISTRATE JUDGE REGARDING HARMLESS ERROR**

THIS MATTER comes before the Court on the order of the Honorable James A. Parker, Senior United States District Judge, remanding this matter to the United States Magistrate Judge for further proceedings and the parties' supplemental briefs on the issue of harmless error. (See Memorandum Opinion and Order Denying Petitioner's Motion for Entry of Final Judgment on Claim One of his Habeas Corpus Petition ("Memorandum Opinion and Order"), filed July 10, 2007 **[Doc. No. 66]**; Respondents' Supplemental Brief on Issue of Harmless Error, filed Oct. 4, 2007 **[Doc. No. 72]**; Petitioner's Brief Concerning Harmless Error ("Petitioner's Brief"), filed Oct. 24, 2007 **[Doc. No. 74]**). In response to the Court's request, Respondents submitted additional state court records related to the underlying criminal proceedings. (See Order for State Court Records, filed Dec. 3, 2007 **[Doc. No. 77]**; Respondents' Notice Re: Filing of State Court Records, filed Dec. 18, 2007 **[Doc. No. 78]**).

     The parties were directed to address whether the Sixth Amendment Confrontation Clause violation that occurred in state court was "harmless error" under the standard set forth in Brecht v. Abramson, 507 U.S. 619 (1993). Based on its review of the record, the parties' submittals,

and the relevant authorities, this Court finds that the Confrontation Clause violation was not harmless with respect to Petitioner's convictions for first degree murder and conspiracy to commit first degree murder and was harmless with respect to Petitioner's remaining convictions. Accordingly, the Court recommends that Petitioner's § 2254 petition be granted with respect to Petitioner's convictions for first degree murder and conspiracy to commit first degree murder.

## Harmless Error Standard

The violation of Petitioner's Confrontation Clause rights warrants habeas relief only if it had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abramson, 507 U.S. 619, 623 (1993). "In reviewing for harmless error, this court examines 'the entire record to determine the error's possible effect on the jury.'" Jones v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000) (quoting Crespin v. New Mexico, 144 F.3d 641, 649 (10th Cir. 1998)).[1] Additionally, if the Court is "in grave doubt as to the harmlessness of the error . . . the [habeas] petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 437 (1995).[2] "In conducting a harmless error analysis, our task is not to determine whether the evidence is sufficient to support [Petitioner's] convictions in the absence of the inadmissible hearsay. Instead, we must determine, in light of the entire record, whether [the hearsay] evidence so influenced the jury that we cannot conclude that it did not substantially affect the verdict, or whether we have grave

---

[1] Whether an error is harmless in a particular case depends on various factors, including: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; and (4) the overall strength of the State's case. See Jones, 206 F.3d at 957 (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (one inapplicable factor, "the extent of cross-examination permitted," omitted).

[2] "Grave doubt" means that, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." O'Neal, 513 U.S. at 435.

doubt as to the harmlessness of the errors alleged." Cook v. Champion, 188 F.3d 518, 1999 WL 586978, at *3 (10th Cir. Aug. 5, 1999) (unpublished table opinion) (citing Tuttle v. Utah, 57 F.3d 879, 884 (10th Cir. 1995) (internal quotation marks omitted, second set of brackets in original).

**Discussion**

*Whether the constitutional violation was harmless error with respect to Petitioner's convictions of first degree murder and conspiracy to commit first degree murder*

In terms of the "importance of the witness's testimony in the prosecution's case," it is difficult to conclude that Eddie Sanders' statements did not play an important role in the prosecution's case, particularly with respect to the charges against Petitioner. The prosecutor began his closing argument by reviewing the events leading up to the death of Darrett McCauley, beginning with a description of McCauley and Kenny Hill as being "at odds" over Hill's belief that McCauley stole drugs and money. The prosecutor concluded his review of these events by stating that after the murder, Sanders gave Petitioner the gun used to kill McCauley, eventually contacted Agents Colbridge and Pittman, and "tells them what I've told you." (Tape #73). Thus, Sanders' statements appear to have provided the outline of the case that the prosecution presented to the jury. Petitioner points out that "the testimony of FBI agents Colbridge and Pittman- -a significant portion of which was devoted to Sanders' statements and the circumstances surrounding those statements- -consumed all or part of 20 out of 45 trial tapes devoted to the state's case-in-chief." (Petitioner's Brief at 9 (citation omitted)).

In arguing to the jury that Petitioner could be guilty of first degree murder "even if he did not pull the trigger," the prosecutor relied heavily on evidence that was introduced primarily, if

3

not solely, through Sanders' statements.[3]  Significantly, nothing other than Sanders' statements provided <u>direct</u> evidence at trial that Petitioner:  (1) told Sanders to "babysit" McCauley at a motel on August 12, 1993 (2) agreed with Sanders and Hill that McCauley should be taken to "the Mexicans" who wanted to kill McCauley, (3) instructed Sanders to guard McCauley in the shed at Petitioner's house, (4) either told and/or forced McCauley to get in the toolbox on August 14, 1993[4], (5) told Hill and Sanders to drive around until they received instructions from Petitioner on where to deliver McCauley, and (6) took the gun that killed McCauley from Sanders and told Sanders that he (Petitioner) had destroyed the gun.

Applying the <u>Van Arsdall</u> factors, the Court finds that Sanders' statements were highly important to the prosecution's case against Petitioner on the charges of first degree murder and conspiracy to commit first degree murder.  Sanders' statements were not merely cumulative and they lacked corroboration with respect to several material points.[5]  In reaching these findings, the Court does not mean to say that Sanders' statements constituted the only evidence against Petitioner at trial.  Other evidence was presented that tended to incriminate Petitioner in McCauley's murder.[6]  However, Sanders' statements, as presented through Agents Colbridge

---

[3]For example, the prosecutor emphasized that Petitioner: (1) ordered that McCauley be taken to the Mexicans to be killed, (2) put McCauley in the toolbox, (3) told [Hill and Sanders] to "wait to hear from me [Petitioner]", and (4) took the gun and melted it down.  (Tape #74).

[4]Except for Sanders' statements, no evidence indicates that Petitioner was present when McCauley was placed in the toolbox.

[5]To the extent that some of Sanders' statements were corroborated by other evidence, Sanders' statements may have served as necessary corroboration in the mind of the fact-finder. That is, without one, the jury might not have believed the other.  <u>See</u>, e.g., <u>Stallings v. Bobby</u>, 464 F.3d 576, 582-83 (6th Cir. 2006).

[6]For example, evidence from sources other than, or in addition to, Sanders indicated that: (1) Petitioner was the head of a drug organization to which Sanders, Hill, McCauley and others

and Pittman, constituted the only <u>direct</u> evidence of Petitioner's intent and involvement regarding the false imprisonment of McCauley in the toolbox and McCauley's murder.

As Petitioner notes, the introduction at trial of a codefendant's confession expressly implicating another is "powerfully incriminating" and "more vivid than inferential incrimination, and hence more difficult to thrust out of mind." Richardson v. Marsh, 481 U.S. 200, 208 (1987). In light of the record before it, this Court cannot conclude that the admission of Sanders' statements did not have a substantial and injurious effect or influence on the jury's verdict with respect to Petitioner's convictions of first degree murder and conspiracy to commit first degree murder. At a minimum, the Court harbors grave doubt as to the harmlessness of the constitutional violation with respect to those convictions. Accordingly, the Court recommends that the writ of habeas corpus be granted as to Petitioner's convictions of first degree murder and conspiracy to commit first degree murder.

> *Whether the constitutional violation was harmless error with respect to Petitioner's remaining convictions related to false imprisonment and aggravated battery*

Sanders' statements provided the only direct evidence that Petitioner was involved in falsely imprisoning McCauley either in the shed on August 13, 1993 or in the toolbox on August 14, 1993. However, the Court does not find that Sanders' statements were similarly important as evidence tending to show that Petitioner was involved in committing false imprisonment and aggravated battery against McCauley in Petitioner's house on August 13, 1993. Independent evidence, including direct testimony from Mario Ontiveros, placed Petitioner, Hill and

---

belonged, (2) on August 13, 1993, Petitioner left an injured McCauley with those who injured him, (3) the truck and toolbox in which McCauley was transported on August 14, 1993 belonged to Petitioner, and (4) Petitioner provided various accounts regarding his knowledge of McCauley's whereabouts.

McCauley inside Petitioner's house on August 13, 1993.  (Tape #50).  Ontiveros testified that he heard McCauley screaming from inside the house and that Petitioner subsequently called him and Sanders into the house, saying, "Y'all come look at this."  (Id.).  Petitioner's son, Chris Buchanan, testified that when he came home that day, Petitioner would not initially allow him into the house.  (Tape #60).  Chris also testified that he saw blood on Petitioner's elbow and that Petitioner admitted spraying McCauley with pepper spray, in an attempt "to settle him down." (Tape #61).  Indeed, as Respondents note, Petitioner's counsel effectively conceded in his closing argument that the evidence showed that his client was an accessory to aggravated battery.  (Tape ##76-77).

In light of this, and other evidence, the Court finds that the admission of Sanders' statements constituted harmless error with respect to Petitioner's convictions of false imprisonment, conspiracy to commit false imprisonment and aggravated battery.  Accordingly, the Court recommends that the writ of habeas corpus not be granted on that basis regarding those convictions.

## Conclusion

The Court finds that the violation of Petitioner's Sixth Amendment Confrontation Clause right that occurred when the state trial court admitted Sanders' statements as evidence was not harmless error with respect to Petitioner's convictions of first degree murder and conspiracy to commit first degree murder.  Accordingly, the Court recommends that Petitioner's § 2254 petition be granted with respect to Petitioner's convictions for first degree murder and conspiracy to commit first degree murder.

Within ten (10) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE